DAY & NIGHT MANUFACTURING COMPANY, a Division of Carrier Corporation, Appellant, v. FIDELITY AND CASUALTY COMPANY OF NEW YORK, Respondent.

No. 5618

April 10, 1969                    452 P.2d 906

[Rehearing denied May 6, 1969]

*Deaner, Butler & Adamson,* of Las Vegas, for Appellant.

*Singleton, DeLanoy, Jemison & Reid,* of Las Vegas, for Respondent.

228

## OPINION

By the Court, THOMPSON, J.:

The issue is whether a contractor's surety bond given pursuant to NRS ch. 624 affords protection to a supplier of materials. The district court ruled that it does not and upon appropriate motion dismissed the supplier's complaint. That court ruled correctly.

1. Just last year we indicated, without deciding the point, that a supplier of materials is not protected by a contractor's surety bond. Garff v. J. R. Bradley Company, 84 Nev. 79, 436 P.2d 428, 430 (1968). We there distinguished our prior opinion in Royal Indemnity Co. v. Special Service, 82 Nev. 148, 413 P.2d 500 (1966), stating: "There, the bond afforded coverage for labor and material bills incurred by the contractor, even though the contractor's licensing statute pursuant to which the bond was furnished did not specifically require such coverage." That language is clear in its meaning. A surety company may, as in Royal Indemnity, write a bond in such fashion as to afford protection to a supplier, but the contractors' licensing statute does not compel the surety to do so and, as in Garff, if the wording of the contractor's bond follows the

wording of the statute, the material supplier is not protected by the bond. The material supplier is protected by the lien law of Nevada, NRS ch. 108, and may recover the obligation owing him by resort to the procedures therein specified.

2. The bond statute, NRS 624.273(1), was written to protect (1) owners, (2) workmen, and (3) members of the general public including materialmen who are "injured by the unlawful act or omission of the contractor. . . ."[1] In the case before us the material supplier contends that the failure of the contractor to pay him for materials furnished is an "unlawful omission" within the contemplation of the statute.

Chapter 624 is a contractors' licensing statute enacted in the public interest to control and supervise the contracting business in this state. The "unlawful act or omission" mentioned in NRS 624.273(1) is referrable to acts or omissions declared by ch. 624 to be unlawful. The contractor's surety bond is required to afford protection against that eventuality. It is unlawful for a contractor to engage in business without a license (NRS 624.230); to accept a contract in excess of license restrictions (NRS 624.290); to assign his license to another (NRS 624.305). Should these omissions or acts occur to the injury of a material supplier, the surety bond would afford protection.

The failure of a contractor to pay his supplier of materials is not declared to be an unlawful act or omission by ch. 624. The surety bond, given pursuant to ch. 624, may not be expanded to embrace occurrences not falling within that chapter, unless, of course, as in the Royal Indemnity case, the language of the bond discloses an intention to cover such occurrences.

3. The appellant suggests that NRS 624.330 possesses

---

[1]The statute reads: "1. Each bond or deposit required by NRS 624.270 shall be in favor of the State of Nevada for the benefit of any person who:

(a) As owner of the property to be improved entered into a construction contract with the contractor and is damaged by failure of the contractor to perform such contract or to remove liens filed against such property;

(b) As an employee of the contractor performed labor on or about the site of the construction contract; or

(c) Is injured by any unlawful act or omission of the contractor in the performance of a contract."

relevance to the issue before us, a suggestion with which the dissenting Justices agree. That section concerns persons who are exempt from the operation of ch. 624. Such persons need not be licensed as contractors, nor furnish the surety bond required by NRS 624.270. The section has nothing whatever to do with the scope of coverage of the surety bond.

Affirmed.

ZENOFF and MOWBRAY, JJ., concur.

BATJER, J., dissenting:

I dissent. The appellant's assignor sold and delivered certain materials to Reliable Air Conditioning, Inc., between July 18, 1967 and September 27, 1967, for a total price of $6,102.78. The appellant's first cause of action related solely to Reliable Air Conditioning, Inc., which is not involved in this appeal. In the second cause of action it is alleged that Reliable Air Conditioning, Inc., was indebted to the appellant and that respondent, Fidelity and Casualty Company of New York, furnished a bond pursuant to NRS Chapter 624 in the amount of $3,000; that Reliable Air Conditioning, Inc., was the contractor-principal thereon and Fidelity and Casualty Co., was the surety; and because of Reliable Air Conditioning, Inc.'s failure to pay, its surety was liable for payment under the bond.

Pursuant to NRCP 12(b)(5), the respondent filed its motion to dismiss on the ground that the complaint failed to state a claim against it upon which relief could be granted, and in its supporting points and authorities alleged that neither the bond nor NRS Chapter 624 require or contemplate security for material suppliers. The trial court granted the motion and dismissed the action against respondent.

In considering a motion to dismiss, all material facts well pleaded in the complaint must be taken as true. National Van Lines, Inc. v. United States, 326 F.2d 362 (7th Cir. 1964). On a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, the claim consists not only of the facts alleged but the law applicable to those facts at the time the claim arose. The motion raises for determination issues of law going to the right to any relief upon the face of the complaint.

The appellant contends that the trial court erred when it found that a supplier of materials is not protected by a bond written under the provisions of NRS Chapter 624. I agree with the appellant's contention.

Although on prior occasions we have touched upon the

question, for the first time this court has been asked to squarely decide whether suppliers of materials are protected by a bond executed according to the provisions of NRS Chapter 624. In Royal Indemnity Co. v. Special Service Supply Co., 82 Nev. 148, 413 P.2d 500 (1966), we found it unnecessary to decide the limits of NRS 624.270 (now substantially NRS 624.273) as it related to materialmen's contracts, because in that case the bond went beyond the requirements of the statute. There, however, we said: "It is our view that full compliance with Ch. 624, at least insofar as the instant parties and contract were concerned, encompassed payment of materialmen's bills in an appropriate spirit of 'financial responsibility'." Nevertheless, by way of dicta it was inferred in *Royal Indemnity* that Chapter 624, standing alone, might not require bonding to protect suppliers of material when we said: ". . . Royal Indemnity impliedly agreed to incur liability for materials obtained during the term of the bonding contract, *though Ch. 624, standing alone, might not require such a bonding.*" (Emphasis added.)

Again, by way of dicta, the majority of this court in Garff v. J. R. Bradley Company, 84 Nev. 79, 436 P.2d 428 (1968), touched upon the scope of bond coverage required by NRS Chapter 624, when we said: "In the Royal Indemnity case we held that the surety was liable on a bond where, by expressly denying liability for prior materials supplied, the surety, by implication, accepted liability for materials supplied to the contractor after the date of the bonding agreement. There, the bond afforded coverage for labor and material bills incurred by the contractor, *even though the contractor's licensing statute pursuant to which the bond was furnished did not specifically require such coverage.*" (Emphasis added.)

Since the above quoted language from *Royal Indemnity* and *Garff* was mere dictum that rested upon a misinterpretation of pertinent statutes, I believe this court should overrule that dictum which indicated that NRS Chapter 624 did not specifically require bonded coverage for material bills. Stanley v. Levy & Zentner Co., 60 Nev. 432, 112 P.2d 1047 (1941).

In Vegas Franchises v. Culinary Workers, 83 Nev. 422, P.2d 263 (1967) we said: "Seldom is stare decisis appropriately applied to dictim (citations omitted). It is never appropriately utilized when the dictum rests upon a false assumption, since its effect in such instance is the perpetuation of error." Fletcher v. Scott, 277 N.W. 270 (Minn. 1938); Louisville & N. R. Co. v. Hutton, 295 S.W. 175 (Ky. 1927).

I believe that NRS Chapter 624 requires bonded coverage

of all suppliers of material except those excluded by NRS 624.330. The intent of the legislature to include bonded coverage for suppliers of material within NRS Chapter 624 is manifest by NRS 624.330(5),[1] which excluded from NRS Chapter 624 the sale or installation of any finished product, materials or articles of merchandise which are not actually fabricated into and do not become a permanent fixed part of the subject structure. By implication the chapter applied to and is intended to cover the sale or installation of any finished product, material or article of merchandise which is or which may reasonably be intended to be fabricated into and become a permanent part of the structure involved. If the suppliers of materials were not intended to be protected by the bond which is required by NRS Chapter 624, the exception found in NRS 624.330(5) would be mere surplusage and meaningless.

The majority opinion suggests that NRS 624.330 has nothing whatever to do with the scope of coverage of the surety bond required by NRS Chapter 624, but only sets forth persons who need not be licensed as contractors and who need not furnish the surety bond. This is a narrow and unrealistic interpretation of that section.

Respondent also contends that it would be grossly unreasonable to interpret NRS Chapter 624 as requiring a bond to protect suppliers of material in the performance of a contract, because they can protect themselves by filing mechanic liens. While the majority of this court agrees with the respondent's position, I find this argument untenable. First, NRS 108.238[2] preserves the right of any person to whom any debt may be due for work done or material furnished to maintain a personal action to recover such debt against the person liable therefor. This most certainly includes sureties on statutory bonds. Secondly, NRS 624.273(1) requires a bond for the removal of liens filed against the property of the owner when the bonded contractor has failed to remove them. It is no less reasonable that a supplier of material have his payment secured in the first instant than it is to require that he be paid if he files a

---

[1]NRS 624.330(5). "The sale or installation of any finished products, materials or articles of merchandise which are not actually fabricated into and do not become a permanent fixed part of the structure."

[2]NRS 108.238. "Nothing contained in NRS 108.221 to 108.2394, inclusive, shall be construed to impair or affect the right of any person to whom any debt may be due for work done or material furnished to maintain a personal action to recover such debt against the person liable therefor."

lien against the property where the material is used and the contractor fails to remove it.

The respondent further argues that even if suppliers of material come within the protection of NRS Chapter 624 that the term "omission" as used in conjunction with the term "unlawful act" in NRS 624.273 connotes the inactive correlative of an unlawful act. Again the majority of the court has agreed with the respondent. I do not interpret the meaning of the word "omission" as found in NRS 624.273, as the inactive correlative of an unlawful act, but instead find that the word "omission" as used means the failure to do that which the law requires to be done. People v. Hughey, 47 N.E.2d 77, 80 (Ill. 1943); People v. Bundesen, 109 N.E.2d 385 (Ill. 1952). The omissions referred to in NRS 624.273 need not be unlawful omissions.

A buyer must pay for the goods he receives. NRS 104.2301 provides as follows: "The obligation of the seller is to transfer and deliver and *that of the buyer is to accept and pay* in accordance with the contract." (Emphasis added.) The failure of the buyer to pay for the goods is the failure to do that which the law requires to be done and is an omission in the performance of a contract.

Finally, the respondent contends that the term "performance of a contract" as found in NRS 624.273 relates to a contract between the contractor and someone for whom the work of contracting is performed. NRS 624.273 read in its entirety belies this interpretation. If the legislature had intended to limit NRS 624.273(3) to a "construction contract" it would have used words similar to those found in NRS 624.273(1).

I believe that the appellant is within the purview of NRS Chapter 624 and is within the scope of the definition of a "person" injured by the omission of a contractor in the performance of a contract, and should be entitled to the protection afforded by the bond required by NRS 624.270, unless disqualified under NRS 624.330.

COLLINS, C. J., concurs.